IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RYAN W. KIRKRUFF

        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

Case No. 6:15-cv-02274-AA
OPINION AND ORDER

_____

AIKEN, Judge:

       Plaintiff Ryan W. Kirkruff brings this action pursuant to the Social Security Act ("Act"),
42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social
Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability
Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is
affirmed.

## BACKGROUND

       On April 22, 2009, plaintiff applied for DIB, alleging disability beginning May 11, 2005.
Tr. 286. Plaintiff alleged he suffered from severe back and leg pain due to degenerative disc
disease and fatigue due to adrenal insufficiency. Tr. 312. His application was denied initially
and upon reconsideration. Tr. 21. On February 22, 2011, plaintiff appeared at his first disability

hearing. Tr. 58–98. Following that hearing, the ALJ found him not disabled and denied his claim. Tr. 131–41. The Appeals Council remanded because the ALJ had not adequately explained his decision to give little weight to the opinion of Dr. Thorsen, a psychologist. Tr. 151–52. On May 16, 2013, plaintiff appeared at his second disability hearing. Tr. 100–23. The ALJ held the record open to permit plaintiff to submit treatment records from Dr. Thorsen. Tr. 120. At a supplemental hearing on January 14, 2014, plaintiff's non-attorney representative explained that Dr. Thorsen had been unresponsive to requests to produce those records. Tr. 44–57. The ALJ issued a subpoena, but Dr. Thorsen never produced the records. Tr. 48–49. On May 7, 2014, the ALJ found plaintiff not disabled. Tr. 21–36. The Appeals Council denied review, and plaintiff filed a complaint in this Court. Tr. 1.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "chronic pain syndrome secondary to lumbar degenerative disc disease, status post microlaminectomy, discectomy and microdiscectomy x2 at L4-L5, without significant central canal or foraminal stenosis; adrenal insufficiency; hypogonadism; generalized anxiety disorder (GAD); personality disorder NOS; [and] dysthymic disorder[.]" Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity to

perform a range of light exertion work as defined in 20 [C.F.R. §] 404 1567(b). He could lift 20 pounds occasionally and 10 pounds frequently. He was able to sit, stand and walk for each 30 minutes at a time. He was able to sit for a total of four hours and to stand/walk for a total of four hours, for combined total of eight hours of activity. He required the option to sit or stand at will, while still completing essential tasks. Mr. Kirkruff occasionally could crouch, stoop, crawl, kneel, and climb ramps/stairs. He could not climb ladders, ropes, or scaffolds. He could never be exposed to hazards such as unprotected heights or large

moving equipment. Mr. Kirkruff had the ability to understand, remember and carry out simple instructions in a setting with no public contact, no teamwork assignments, and no strict production pace requirements (defined as no hourly rate so long as adequate work is completed by the end of the workday).

Tr. 26; 20 C.F.R. § 404.1520(e). At step four, the ALJ concluded plaintiff would be unable to perform any past relevant work. Tr. 35; 20 C.F.R. § 404.1520(a)(4)(iv), (f). At step five, the ALJ found plaintiff could perform several jobs existing in significant numbers in the national economy: label coder, collator, and hand-packager. Tr. 35; 20 C.F.R. §§ 404.1520(a)(4)(v), (g). Accordingly, the ALJ found plaintiff not disabled and denied his application for benefits. Tr. 36.

## DISCUSSION

Plaintiff asserts the ALJ erred in two ways. First, plaintiff challenges the ALJ's decision to give less than full weight to the opinions of Dr. Ganter, plaintiff's treating primary care physician; Dr. Thorsen, the psychologist whose opinion was the basis for the Appeals Council's remand; and Dr. Stowell, a consultative physician. Second, plaintiff contends the ALJ erred in finding plaintiff's testimony about the severity of his pain and other symptoms not credible. Because the weight of plaintiff's symptom testimony affects the analysis of the doctors' opinions, I address the symptom statements first. I then turn to plaintiff's arguments regarding the medical opinions.

I.    *Plaintiff's Subjective Symptom Testimony*

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests

the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In a written adult function report completed in May 2009, plaintiff described a cycle of pain and fatigue/nausea triggered by pain medications. Tr. 345. He wrote that he spends most of the day resting, watching TV, playing videogames, doing internet research on treatments, and spending time with his wife. Tr. 345. He is able to feed his dog and take her on short walks. Tr. 346. He can prepare only very simple meals and otherwise does "very little" in terms of household chores. Tr. 347. He is limited to one to three total hours of activity each day. Tr. 348. His memory and concentration are affected due to severe pain. Tr. 350. Most days are a mix of "bad" and "not so bad." Tr. 352. Plaintiff is able to drive himself to doctor's appointments. Tr. 347. However, the journey thirty minutes each way to Eugene is exhausting and he requires two to three days to recover. Tr. 352.

At the first disability hearing, in 2011, plaintiff testified that his most limiting symptom is chronic lower back pain. Tr. 69. The pain changes in character; sometimes is feels "like a broken bone" and other times "like someone's literally sticking a hot poker into my spine." Tr. 69. He gets only four to six hours of sleep each night and he wakes up from pain at least a couple of times each week. Tr. 81. Plaintiff treats the pain with oxycodone, subject to a dosage limit he imposed on himself because higher dosages and other pain medications such as

morphine were not effective in treating pain. Tr. 75. He also uses marijuana for pain relief. Tr. 75–76.

Plaintiff also suffers from Addison's disease, which causes fatigue. Tr. 70. He testified the fatigue would not prevent him from working because he could use available sick leave and vacation time to deal with the fatigue. Tr. 71. Although he described a set of severe anxiety-caused symptoms such as uncontrollable sweating and a racing heart, he acknowledged his anxiety was "much better" as of July 2010. Tr. 71–72.

He is able to sit for a maximum of one hour at a time, stand for thirty to forty-five minutes at a time, and walk for no more than thirty minutes at a time. Tr. 77–78. If he exceeds those limits, it causes severe back pain that radiates into his legs. Tr. 77. He spends the majority of the day reclining to keep pain at a minimum. Tr. 79. He estimates he could spend a maximum of three combined hours of the day sitting, standing, and walking, at which point he would have "exhausted" his ability to be active for the day. Tr. 79. Plaintiff is able to do "minor chores" such as putting away laundry but otherwise cannot help much around the house. Tr. 80. He drives, but has "trouble" with the forty-five minute drive from Cottage Grove to Harrisburg. Tr. 80. The pain causes problems with attention and concentration. Tr. 82. He plays video games to keep his mind "a little bit active" but he has to pause the game every fifteen to twenty minutes due to concentration problems. Tr. 82.

At the second disability hearing, in 2013, plaintiff testified that he had returned to full-time work as a customer service representative for three months in 2012. Tr. 106. The employer afforded him significant accommodations, including allowing him a ten-minute break to walk and stretch every hour and providing him a special ergonomic chair. Tr. 107. He had pain but was "managing" and "was glad to be back to work." Tr. 113. He stated that "for the most part"

he was able concentrate adequately. Plaintiff had a driving incident which exacerbated his back pain, however, and he had to reduce his hours to part-time and then leave the job. Tr. 106–07. Plaintiff estimated he was spending at least a third of each day lying down. Tr. 117.

The ALJ concluded plaintiff's impairments could reasonably be expected to produce pain, fatigue, and problems with attention and concentration. Tr. 32. However, the ALJ found plaintiff's statements about the severity of those symptoms not credible for several reasons. First, the ALJ noted that the treatment plan for plaintiff's conditions was generally routine or conservative in nature, with providers decreasing pain medication dosages and encouraging increased physical activity. This is a clear and convincing reason to give plaintiff's symptom testimony little weight. *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment"). Plaintiff objects to the characterization of his treatment as conservative, noting that he had two surgeries. But those surgeries took place early in the purported disability period; in the years leading up to his application 2009, the medical records show decreasing doses of medications and recommendations to increase physical activity. The ALJ permissibly inferred from those records that plaintiff's pain was at a manageable level.

Second, the ALJ stated that there were large gaps in plaintiff's treatment, both during and after the period at issue. Tr. 32. This, too, is a clear and convincing reason to give plaintiff's symptom testimony less weight. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (finding gaps in a treatment regimen a permissible reason to discount subjective symptom testimony). There are several gaps in treatment, including a stretch without visits to a primary care physician or the pain clinic between June and November 2009 and limited visits with doctors in both 2007 and 2011. Particularly in view of plaintiff's relatively conservative pain

treatment regimen during those years, the ALJ permissibly noted and considered treatment gaps in determining how much weight to give plaintiff's testimony.

Third, the ALJ found plaintiff's symptom testimony inconsistent with his activities of daily living. An ALJ may consider the consistency between symptom testimony and daily activities in deciding whether the credit the symptom testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Here, the ALJ found inconsistencies between (1) plaintiff's ability to play videogames/do online research and his statements about problems with attention and concentration; (2) plaintiff's ability to drive himself to Eugene and his statements about how long he can sit in one position; (3) plaintiff's statements to medical providers that he takes walks three times a day and his hearing testimony about how long he can walk; and (4) plaintiff's ability to return to full-time work and his statements about the disabling effect of his symptoms. Tr. 32.

The ALJ erred with respect to the first three conflicts. Regarding videogames and concentration, plaintiff testified he pauses the games every fifteen to twenty minutes for a mental break. Tr. 82. The drive to Eugene is thirty minutes long, consistent with his statements that he can sit thirty minutes at a time. Tr. 348. Plaintiff also stated that trips to Eugene for medical treatment leave him exhausted and it takes two to three days for him to recover. Tr. 352. And three short walks per day are consistent with his testimony that he can walk for thirty minutes at a time. Tr. 78. However, the ALJ permissibly found plaintiff's return to full-time work undermined his symptom testimony. As noted, plaintiff testified that although he had pain while at work, he was "managing" and was glad to be working again. Tr. 113. Plaintiff did not reduce his hours or leave work until he reinjured his back after his date last insured. Tr. 106–07. The

ALJ reasonably concluded plaintiff's return to full-time work, even with accommodations, suggested his pain and associated symptoms were not completely disabling.

Fourth, the ALJ found plaintiff had a tendency to exaggerate symptoms when he knew he was being assessed for disability purposes. Such goal-directed exaggeration is a clear and convincing reason to doubt a plaintiff's subjective symptom testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ supported her finding with several examples. For example, the ALJ noted Dr. Stowell's documentation of "non-physiologic findings" and "inconsistencies" in the course of a disability-related evaluation, Tr. 602. The ALJ also contrasted plaintiff's July 2010 presentation for a medical treatment visit with his presentation at a January 2011 disability evaluation with an occupational therapist. In July 2010, the doctor noted that plaintiff "arises from a chair without difficulty" but that his "range of motion is limited by pain." Tr. 665. During the January 2011 evaluation, by contrast, the occupational therapist wrote that plaintiff displayed "dramatic acting out behavior," including an "unusual walking posture," audible groans, buckling knees, and dragging feet, Tr. 670. Relatedly, the ALJ noted the absence of objective findings on physical examinations to corroborate symptom testimony. For example and as described above, problems with gait seemed to come and go depending on whether the plaintiff was seeking medical treatment or being evaluated for disability benefits. These examples provide sufficient support for the ALJ's conclusion that plaintiff was exaggerating his symptoms during the disability application process.

Finally, the ALJ noted that plaintiff had "financial gains beyond" DIB payments at stake. Tr. 33. This appears to be a reference to the fact that plaintiff's entitlement to private insurance payments for long-term disability hinges on the outcome of his Social Security application, and

that plaintiff did not apply for DIB until his long-term disability payments were terminated. Tr. 68, 111. This is not a permissible reason to discredit symptom testimony. As this Court explained more than twenty years ago,

> By definition, every claimant who applies for Title II benefits does so with the knowledge – and intent – of pecuniary gain. That is the very purpose of applying for Title II benefits. The same motivation afflicts every applicant for workers compensation benefits, and every personal injury plaintiff. If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible.

*Ratto v. Sec'y, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1428–49 (D. Or. 1993).

Defendant contends that *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), permits an ALJ "to consider secondary gain as affecting credibility." Def.'s Br. 18 (doc. 24). But *Tommasetti* stands for a much more limited rule. In that case, the ALJ stated that a $97,000 "financial reserve" called into question the reliability of the plaintiff's symptom testimony. *Tommasetti*, 533 F.3d at 1040. The Ninth Circuit held that such an inference was permissible with respect to a plaintiff's motivation for stopping work – *i.e.*, significant financial resources may suggest a plaintiff is out of work because he has no need to earn income rather than because he is unable to work due to his limitations. *Id.* Here, plaintiff's receipt of disability benefits does not lead to an inference that he stopped working for some reason unrelated to disability. Indeed, receipt of such benefits *connects* plaintiff's decision to stop working to his injuries. The fact that plaintiff applied for DIB only after the private insurance benefits simply shows that plaintiff needs some source of income to live. If the presence of financial motivation were a permissible reason to discredit subjective symptom testimony in a Social Security case, it would have the perverse effect of making the symptom testimony of any low-income plaintiff automatically less credible than the symptom testimony of a wealthy plaintiff. Accepting

defendant's broad interpretation of *Tommasetti* would "circumvent . . . the very purpose of disability benefit applications," which is to ensure that disability does not leave a claimant in abject poverty. *Edgar v. Astrue*, 2010 WL 2730927, *5 (D. Or. Jun. 2, 2010).

When an ALJ relies on a mixture of impermissible and permissible factors to discredit a plaintiff's subjective symptom testimony, the reviewing court must determine whether the errors were harmful to the ultimate disability determination. *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004). Here, the ALJ found that plaintiff's treatment during the relevant time period was relatively conservative, that there were gaps in the medical record, that plaintiff was able to return to full-time work despite his symptoms, and that plaintiff tended to exaggerate his symptoms when he knew he was being evaluated for disability purposes. Those findings, while not compelled by the record, are supported by more than a mere scintilla of evidence. Although the ALJ erred in evaluating plaintiff's subjective symptom testimony, her ultimate credibility finding remains supported by substantial evidence and must be upheld.

II.    *Medical Opinions*

Plaintiff next challenges the ALJ's treatment of the opinions of three physicians: Dr. Ganter, a treating physician; Dr. Thorsen, an examining psychologist; and Dr. Stowell, an examining physician. When the opinion of a treating or examining physician is contradicted by other evidence in the record, the ALJ may reject the treating or examining source's opinion only for "specific and legitimate" reasons supported by substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

A.    *Dr. Ganter's Opinion*

Dr. Ganter was plaintiff's treating primary care physician throughout the alleged disability period. He filled out two capacity evaluations for plaintiff, one in 2009 and another in

2013. In the 2009 evaluation, under "physical capacities," Dr. Ganter provided no responses and wrote "this needs to be done by physical therapist I have no information on this." Tr. 590. Dr. Ganter indicated that plaintiff suffered from fatigue due to Addison's disease and opined that fatigue was disabling. Tr. 591. He affirmed that plaintiff suffered from pain with a "reasonable medical basis" but wrote "unknown" when asked whether that pain was disabling. Tr. 592. Finally, he opined that the mental effects of the pain would be "slight," but stated that he recommended a "more appropriate evaluation" with a psychiatrist. Tr. 593.

The 2013 evaluation contains substantially more information. Dr. Ganter recommended a sit/stand option at will and opined plaintiff could sit for three hours total and stand/walk for three hours total in an eight-hour day. Tr. 866. He stated that plaintiff could never lift more than twenty pounds or stoop; could occasionally climb, balance, kneel, and crawl; and could frequently lift ten pounds, crouch, and reach above shoulder level. Tr. 367. He opined that plaintiff suffered from disabling fatigue, Tr. 867, and disabling pain, Tr. 868.

The ALJ first noted that neither the 2009 nor the 2013 evaluation specifies an onset date for the limitations. Tr. 33. However, the ALJ found that the record generally showed a worsening of symptoms after the plaintiff's date last insured in 2010. Relying on that trend, the ALJ concluded it was likely that the 2013 evaluation applied to the period after plaintiff's date last insured. The ALJ gave Dr. Ganter's opinion little weight because it was unsupported by objective findings in the treatment records, which contained no documentation of gait abnormalities or neurologic deficit, and relied extensively on plaintiff's subjective complaints.

The ALJ provided specific, legitimate reasons to discount Dr. Ganter's opinion. The ALJ reasonably concluded that the 2013 evaluation likely concerned plaintiff's limitations after his insured status expired. With respect to the 2009 evaluation and to the extent that the 2013

evaluation addressed the disability period, the ALJ permissibly concluded that Dr. Ganter's pre-2010 medical records do not support his conclusion that plaintiff's pain and fatigue were completely disabling. Notably, although the RFC does not match the limitations expressed in Dr. Ganter's 2013 evaluation, it tracks them quite closely. This suggests that even though the ALJ gave little weight to Dr. Ganter's opinion on the ultimate issue of disability, she nonetheless carefully considered his opinion regarding plaintiff's physical limitations.

B.    *Dr. Thorsen's Opinion*

Dr. Thorsen was plaintiff's treating psychologist during 2012 and 2013. Tr. 879. The evaluation on which plaintiff relies, however, was completed in 2009, when it appears Dr. Thorsen had not yet established a treatment relationship with the patient. As noted above, Dr. Thorsen did not submit treatment notes or records despite multiple requests and a subpoena. I conclude, therefore, that he should be treated as an examining physician for the purposes of assigning weight to his 2009 opinion.

Dr. Thorsen performed a comprehensive psychological evaluation in August 2009. The evaluation was ordered as part of evaluating plaintiff for installation of a neurostabilizer implant for back pain. Tr. 533. Dr. Thorsen diagnosed generalized anxiety disorder, dysthymia with atypical features, pain disorder, insomnia, avoidant personality treats, and depressive personality features. Tr. 536. In October 2009, he filled out a capacity assessment questionnaire. He opined plaintiff had marked difficulties in social functioning; marked difficulties with concentration, persistence and pace; marked restrictions in activities of daily living; and one to two episodes of decompensation of extended duration. Tr. 528.

The ALJ gave little weigh to Dr. Thorsen's opinion. First, the ALJ questioned the reliability of the questionnaire because it was filled out "months" after the psychological

evaluation and the ALJ had "no way of knowing" how much information Dr. Thorsen retained between completing the evaluation and filling out the questionnaire. Tr. 34. This is not a legitimate reason to discredit Dr. Thorsen's opinion. Dr. Thorsen attached a copy of the five-page, single-spaced psychological evaluation to the questionnaire. Tr. 528. It is unreasonable to assume that in the two months between the conducting the evaluation and filling out the questionnaire, Dr. Thorsen retained so little information that he could not reliably interpret his own contemporaneous report.

The ALJ also discredited Dr. Thorsen's opinion because the subject matter of those restrictions was not addressed in the narrative body of the psychological evaluation. For example, the ALJ stated that "[t]he very limited history taken in the report did not include reference to problems with concentration, other than Mr. Kirkruff's assertion that he had ADD and Dr. Thorsen ruling out that diagnosis." Tr. 34. That assessment is not entirely accurate. Dr. Thorsen administered The Conners' Continuous Performance Test and concluded that the assessment showed "potential clinically significant attention problems." Tr. 535. Dr. Thorsen also discussed plaintiff's difficulty with interpersonal relationships. Tr. 534. However, Dr. Thorsen did not explain how he arrived at his conclusion that restrictions in the areas of concentration, persistence or pace or social functioning were "marked." And there is no apparent support in the narrative report for a finding of marked restrictions in activities of daily living or repeated episodes of decompensation.

Finally, the ALJ noted conflicts between the limitations assessed by Dr. Thorsen and by another examining psychologist, Dr. Prescott. Dr. Prescott consultatively examined plaintiff December 2010. She assessed "deficits with concentration and attention due to chronic pain and his anxiety," but overall opined those deficits not lead to limitations as severe as those assessed

by Dr. Thorsen.    Tr. 617.    Similarly, Dr. Prescott noted "anxiety with regard to social functioning" but rated any restriction "mild."  Tr. 618.  The ALJ concluded that Dr. Prescott explained the reasoning behind her assessment better than Dr. Thorsen.  The ALJ reasonably credited Dr. Prescott's opinion over Dr. Thorsen's on that basis.  The Social Security regulations specifically permit an ALJ to give more or less weight to an opinion "depend[ing] upon the degree to which they provide supporting explanations for their opinions."    20 C.F.R. § 404.1527(c)(3).

In a Social Security case, the ALJ is responsible for resolving conflicts in the medical testimony.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Although the ALJ erred in several respects in assessing Dr. Thorsen's opinion, there is a clear conflict between his assessment and Dr. Prescott's.  The ALJ resolved that conflict on a basis expressly endorsed by the regulations.  Accordingly, the errors related to the ALJ's treatment of Dr. Thorsen's opinion were harmless.

> C.    *Dr. Stowell's Opinion*

The ALJ gave great weight to the Dr. Stowell, who consultatively examined plaintiff.  Tr. 34.  However, the ALJ rejected a narrow part of Dr. Stowell's opinion, in which Dr. Stowell stated plaintiff could only occasionally reach, push, or pull.  Tr. 607.  Plaintiff challenges the ALJ's decision to give no weight to that portion of Dr. Stowell's opinion.

The ALJ rejected the reach and push/pull portion of Dr. Stowell's opinion because she found them unsupported by the totality of the evidence.  Tr. 34.  Specifically, the ALJ stated that multiple physical examinations showed full motor strength of upper and lower extremities and that there were no objective findings to support limited mobility in reaching, limited strength, or

limited dexterity prior to the date last insured. Finally, the ALJ noted that the narrative portion of Dr. Stowell's report found no manipulate limitations.

I find no error in the ALJ's treatment of Dr. Stowell's opinion. Plaintiff has not cited any objective medical evidence either in Dr. Stowell's report or elsewhere to support a significant reaching limitation. Dr. Ganter, plaintiff's treating physician, opined that plaintiff could frequently reach in a 2013 evaluation, when plaintiff's symptoms appear to have been more severe than they were during the alleged period of disability. Tr. 867. Plaintiff cites his own statement that his pain worsens with reaching. Tr. 852. But that statement was made in 2012 in connection with an injury that occurred after his date last insured. Tr. 852. The ALJ provided specific, legitimate reasons to reject the reach and push/pull portion of Dr. Stowell's opinion.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

Dated this  28th  day of March 2017.

Ann Aiken
United States District Judge